Renee MORGAN, as Personal Representative of the Estate of Gary F. Morgan, Deceased, Plaintiff-Appellant,

v.

The UNITED STATES of America, Defendant-Appellee.

No. 82–3207.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1983.

Decided June 30, 1983.

Carroll D. Gray, Asst. U.S. Atty., Mary J. Koehmstedt, Student Intern, Spokane, Wash., for defendant-appellee.

Chris A. Montgomery, McNally & Stewart, Colville, Wash., for plaintiff-appellant.

Before WALLACE, ANDERSON, and SCHROEDER, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This wrongful death action arises from an accidental electrocution that occurred in the Grand Coulee Dam National Recreation Area in the State of Washington. Plaintiff's decedent, Gary Morgan, was canoeing with a companion and two dogs on Lake Roosevelt in the Recreation Area. Morgan beached the canoe to let the dogs run. After running along the beach a slight distance, one dog stepped into the lake and suddenly disappeared. When Morgan entered the lake to rescue the dog he was instantly overcome and rendered disabled. Morgan's companion cautiously entered the water and, upon feeling a tingling sensation, immediately withdrew and went for help. Divers recovered Morgan's body later that day at the lake's bottom. Subsequent investigation revealed that an electrically-driven irrigation pump located nearby had shorted and discharged electricity into the lake. The pump was owned and operated by a special use permittee, Vern Leach.

Plaintiff initiated suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680, against Leach and the government. Both defendants filed motions for summary judgment, contending Wash.Rev.Code Ann. §§ 4.24.-200–.210 (Supp.1983), the Washington Recreational Use Statute, absolved them of liability.[1] Holding the government owed plaintiff's decedent no duty with respect to the irrigation pump whether or not the Washington statute applied, the district court granted the government's motion for summary judgment and denied Leach's. Having settled her case with Leach, plaintiff appeals from summary judgment in favor of the government.

I.

We do not find it necessary to decide whether summary judgment would be proper absent the Washington statute because we hold the statute does apply. Under the FTCA, the government is liable for negli-

---

1. Wash.Rev.Code Ann. §§ 4.24.200–.210 (Supp. 1983) provide as follows:

    4.24.200. The purpose of RCW 4.24.200 and 4.24.210 is to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon.

    4.24.210. Any public or private landowners or others in lawful possession and control of any lands whether rural or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to, the cutting, gathering, and removing of firewood by private persons for their personal use without purchasing the firewood from the landowner, hunting, fishing, camping, picnicking, swimming, hiking, bicycling, the riding of horses or other animals, clam digging, pleasure driving of off-road vehicles, snowmobiles, and other vehicles, boating, nature study, winter or water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: *Provided,* That any public or private landowner, or others in lawful possession and control of the land, may charge an administrative fee of up to ten dollars for the cutting, gathering, and removing of firewood from the land: *Provided further,* That nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted: *Provided further,* That nothing in RCW 4.24.200 and 4.24.210 limits or expands in any way the doctrine of attractive nuisance: *And provided further,* That the usage by members of the public is permissive and does not support any claim of adverse possession.

gence "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the accident occurred in Washington, we apply Washington tort law. In *Jones v. United States*, 693 F.2d 1299, 1302–03 (9th Cir.1982), this court held the government a "recreational landowner" within the meaning of the Washington Recreational Use Statute.

■ Plaintiff's first argument that the Washington statute does not apply is based on 16 U.S.C. § 457, which provides:

In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injury sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries which it may be.

Plaintiff argues for the interpretation of 16 U.S.C. § 457 found in *Quadrini v. Sikorsky Aircraft Division*, 425 F.Supp. 81 (D.Conn. 1977), where the court held that in suits arising under 16 U.S.C. § 457, the governing law is that of the state within which the federal enclave is located as that state's law existed when the state ceded the property to the federal government. Because the property on which the Grand Coulee Dam National Recreation Area is located was acquired by the federal government in 1902 and 1935, before the Washington Recreational Use Statute was enacted, plaintiff contends the Washington statute cannot apply.

■ Plaintiff's argument lacks merit. *Quadrini* was not initiated under the FTCA because the government was not a defend-ant. Rather, *Quadrini* arose under 16 U.S.C. § 457, which is merely a federal wrongful death statute, paralleling similar state statutes, designed to give a right of recovery for deaths occurring on property within the exclusive jurisdiction of the United States. The *Quadrini* court recognized its result would be different under the FTCA, 425 F.Supp. at 86, and indeed it would, because existing state law governs in FTCA cases notwithstanding the fact the alleged tortious conduct occurs on federal property within the state. *See Jones v. United States*, 693 F.2d 1299, 1301 (9th Cir. 1982) ("Since the accident occurred on government land in Washington, Washington tort law is applicable."); Annot. 7 L.Ed.2d 994 § 1[c] (1962). Because the instant case was filed under the FTCA, plaintiff's reliance on 16 U.S.C. § 457 is misplaced.[2]

■ Plaintiff also contends the Washington statute is inapplicable because the government contractually assumed a higher duty to recreational entrants than the statute requires. Plaintiff points to a 1946 agreement between the Bureau of Reclamation, Bureau of Indian Affairs, and National Park Service, in which the National Park Service agreed to "[e]stablish and maintain supervisory, informational, and protective services as may be necessary for the safe and full use of the Recreational Area for recreational purposes . . . ." Additionally, plaintiff cites language in Leach's special use permit that reserves to the government "the right to go upon said premises or upon any property of the permittee at any time in the performance of any duties . . . ." We do not interpret those provisions as imposing any higher duty than the government normally owes under state law. The 1946 agreement establishes a very general obligation on the government to provide a safe recreational area. That obligation creates no separate or independent duty, but merely is a recognition of the government's

---

**2.** We express no opinion on the reasoning of *Quadrini,* but we note that in *Vasina v. Grumman Corp.,* 644 F.2d 112, 117–18 (2d Cir.1981), the Second Circuit, in which Connecticut is located, expressly rejected *Quadrini*'s interpre-tation of 16 U.S.C. § 457. The *Vasina* court held the wrongful death law of a federal enclave should be identical to that of the surrounding state, however that law might change over time.

responsibility under state tort law. The permit language, moreover, creates simply a right to enter, not a duty to inspect equipment installed by the permittee. We conclude that the scope of the duty owed plaintiff's decedent derives solely from the Washington Recreational Use Statute.

## II.

Under the Washington statute, landowners who open their property for recreational use are immune from liability except in three limited circumstances: (1) when a fee is charged; (2) when injuries are intentionally caused; (3) when injuries are sustained "by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted." Wash.Rev.Code Ann. § 4.24.210 (Supp. 1983). The parties agree both that Morgan paid no fee to canoe on Lake Roosevelt and that his death was not intentionally caused. What remains in dispute is the government's residual duty under the "known dangerous artificial latent condition" language.

The residual duty language is not a model of clarity. It appears somewhat inconsistent to describe a condition as "known" and "latent" in the same breath. Although the Washington courts have never construed the clause, we believe they would adopt the commonsense interpretation that "known" refers to the landowners' mental state, while "latent" refers to a condition not readily apparent to the recreational user. We believe, moreover, that the statute contemplates actual, not constructive, knowledge of the landowner. Had the Washington legislature intended to charge landowners with constructive knowledge it could have used more precise terminology such as *"known or should have known."* It did not, and the reason is apparent from the statute's purpose and history.

■ At common law, the recreational entrant in Washington would be characterized as a "public" invitee. *McKinnon v. Washington Federal Savings and Loan Association,* 68 Wash.2d 644, 414 P.2d 773 (1966). Washington landowners and occupiers owe invitees a duty of ordinary care to keep premises in a reasonably safe condition, which includes an affirmative duty to inspect the premises and discover dangerous conditions. *Egede-Nissen v. Crystal Mountain, Inc.,* 93 Wash.2d 127, 606 P.2d 1214, 1218 (1980) (en banc). Thus, absent the Washington Recreational Use Statute, the landowner or occupier is liable for injuries caused by a dangerous condition of his land about which he knows or should know.

■ The Washington Recreational Use Statute was enacted against the background of the foregoing common law. The purpose of the statute is "to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon ...." Wash.Rev.Code Ann. § 4.24.200 (Supp.1983). *See McCarver v. Manson Park & Recreation District,* 92 Wash.2d 370, 597 P.2d 1362, 1364–65 (1979) (en banc); *Ochampaugh v. City of Seattle,* 91 Wash.2d 514, 588 P.2d 1351, 1356 (1979) (en banc). The statute effectuates that purpose by altering an entrant's status from common law trespasser-licensee-invitee classifications, to a new statutory classification of "recreational user." *See Bilbao v. Pacific Power & Light Co.,* 257 Or. 360, 479 P.2d 226, 227–28 (1971); Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash.L.Rev. 1, 16–19 (1977). A defendant's duty to recreational users is defined by the statute, and consists of avoiding intentional injuries and posting conspicuous signs warning of any known dangerous artificial latent condition. *Bilbao,* 479 P.2d at 227–28. In light of the foregoing, any interpretation of the residual duty clause that would charge the landowner with knowledge of the dangerous condition would emasculate the statute, because it would effectively convert recreational users into public invitees. That would defeat the statutory purpose of increasing the availability of recreational land by providing tort immunity.

Legislative history supports our conclusions. During debate in the Washington Senate, it was proposed that the word "known" should be added preceding "dangerous artificial latent condition." The senator offering the amendment gave the following example:

> Senator Donohue buys a section of range land. He has not explored it foot by foot. Someone says, "Can I hunt on this range land?" and the Senator says, "Yes, you can hunt." Unbeknownst to Senator Donohue, the prior owner somewhere dug a well and didn't properly cover it. Now this is an artificial, latent defect—artificial because man made, latent because it appears to be covered and isn't. Senator Donohue has not personally explored this whole section. This amendment says that the Senator does not have to post something *he doesn't know about.* If there is an open well that he knows about, he has to post it. But he shouldn't be liable for something on this land that he doesn't know about.

H.R. 258, Wash.S.Jour., 42nd Legis. 875 (1967) (emphasis added). In light of the statute's language, history, and purpose, we believe Washington courts would require actual knowledge on the part of the landowner.

### III.

█ Our standard of review over summary judgments is identical to the district court's standard for granting them. Viewing the evidence in the light most favorable to the party against whom summary judgment is sought, we must decide whether there are genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Beckham v. Safeco Insurance Company of America,* 691 F.2d 898, 902 (9th Cir.1982). The district court granted summary judgment when it found "[t]here is nothing in the record to indicate that the Government had knowledge of any danger or any malfunction in the systems." After carefully examining the record, we agree.

Anticipating our holding that the Washington statute precludes the government's continuing duty to inspect, plaintiff theorizes the government may have known the pumping system was dangerous when installed. Under Fed.R.Civ.P. 56(e), however, plaintiff's bare theory cannot withstand the government's evidence that it had no such knowledge. *See Mitchell v. General Electric Co.,* 689 F.2d 877, 879 (9th Cir.1982). The government supported its motion for summary judgment with an affidavit from a qualified electrician who would testify the pumping system complied with electrical construction codes in effect at the time of its installation. Although compliance with the electrical codes is not conclusive on the question of negligence, *Wray v. Benton County Public Utility District,* 9 Wash.App. 456, 513 P.2d 99, 101 (1973), it is certainly relevant to prove the government's lack of actual knowledge. In rebuttal, plaintiff submits the affidavit of a qualified electrician who investigated the accident. The electrician states that the pumping system was dangerous at the time of the accident because it lacked a neutral ground and was not in accordance with current electrical codes. He further states that a reasonable inspection of the system would have quickly revealed the potentially dangerous condition.

Considering the testimony of both witnesses, we still find no genuine issue of material fact that would preclude summary judgment. The testimony of plaintiff's witness is essentially that the government should have known of the dangerous condition. We have held, however, that constructive knowledge is insufficient under the Washington statute. Plaintiff has failed to meet the government's evidentiary showing that it lacked actual knowledge. Accordingly, summary judgment for the government is

AFFIRMED.