Lawrence T. **PALMER**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 88–00909 HMF.**

United States District Court,
D. Hawaii.

June 1, 1990.

Ian L. Mattoch, Honolulu, Hawaii, for plaintiff.

Beverly A. Wee, Asst. U.S. Atty., Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

FONG, Chief Judge.

### BACKGROUND

Plaintiff, Lawrence T. Palmer, filed the instant lawsuit on December 20, 1988, seeking damages for injuries suffered as a result of an accident that occurred at Tripler Army Medical Center swimming pool on June 23, 1988. Plaintiff claims that he slipped and fell on steps that had been washed down by lifeguards that morning and were still wet and slippery at the time of his fall. Defendant, the United States of America, argues that it is immune from liability under Hawaii's Recreational Use Statute.

A bench trial was held before the court on May 1–4, 1990. Ian L. Mattoch appeared on behalf of plaintiff, and Beverly A. Wee appeared on behalf of defendant.

### FINDINGS OF FACT

1. Plaintiff, Lawrence T. Palmer, was born on August 18, 1932. (Plaintiff's Exhibit 1—Medical Records of Kaiser Hospital).

2. Plaintiff moved from California to Hawaii in May 1988, and lived with his stepdaughter, Sherry Hoerr, at the Schofield Barracks from May 1988 until the fall of 1989. (Plaintiff's Testimony).

3. Before leaving California, plaintiff obtained a disability letter from Dr. Willard Adams, notifying his employer that he was to be off work on disability from April 17, 1988 until May 1, 1988. Plaintiff asked the doctor to provide him with this disability letter because he was not having good circulation in his legs and his legs had shut down for about one week. Plaintiff did not take time off from work as planned. (Plaintiff's Testimony).

4. On June 23, 1988, plaintiff took his stepdaughter's children to the Tripler Army Medical Center swimming pool. (Plaintiff's Testimony and Sherry Hoerr's Testimony).

5. Plaintiff did not pay a fee to enter the Tripler Army Medical Center swimming pool area. (Plaintiff's Testimony).

6. Plaintiff's stepdaughter, Sherry Hoerr, was employed at the Tripler Army Medical Center on June 23, 1988. On that date, Hoerr was working at the front desk, checking i.d. cards. Hoerr allowed plaintiff to enter the premises without charge. (Sherry Hoerr's Testimony).

7. The Tripler Army Medical Center recreational facility area normally is only open to certain qualified individuals, such as military personnel, their dependents, and employees of the Army. (Sherry Hoerr's Testimony).

8. The Tripler Army Medical Center recreational facility has a policy of allowing adults without military identification cards into the facility to accompany children under 10 years old. (Sherry Hoerr's Testimony). Because plaintiff was accompanying his grandchildren who were both under 10 years old, plaintiff was permitted to enter the Tripler Army Medical Center premises.

9. Plaintiff took off his shirt and shoes and sat down in a lounge chair by the swimming pool to watch the children play. (Plaintiff's Testimony).

10. Under the facts and circumstances of this case, this court finds that plaintiff was engaging in a "recreational purpose" when he took his grandchildren to the Tripler Army Medical Center swimming pool, took off his shirt and shoes to enjoy the sunlight, and relaxed by the poolside.

11. While watching the children swim in the pool, plaintiff noticed a glare coming across the water. Plaintiff left his lounge chair at the pool and went to retrieve his sunglasses from the pool office. On his way back to the pool area, plaintiff slipped

and fell on one of the top three steps of a flight of six stairs. Plaintiff was walking barefoot at the time of his fall. (Plaintiff's Testimony).

12. From January through March 1988, the areas in and around the recreational facility, including the steps in question, were painted. (Gayle Ortiz' Testimony, Sherry Hoerr's Testimony).

13. On March 26, 1988, a little girl (5–8 years old), who was running down the stairs, slipped and fell on the same steps on which plaintiff fell. After this incident, one of the lifeguards, Glenn Saquilon, put non-skid adhesive strips on the steps and balcony area leading to the steps. (Glenn Saquilon's Testimony).

14. The evidence adduced at trial demonstrates that it is more likely than not that, on the date of the accident, there was no sign near the steps warning plaintiff that the steps were slippery when wet. Glenn Saquilon, the lifeguard who made a "Slippery When Wet" sign and posted it near the steps whenever he was working, was not working on the date of the accident. Gayle Ortiz, the supervising lifeguard, testified that a warning sign was not regularly posted near the steps. Ortiz too was not working at the Tripler Army Medical Center swimming pool on the date of the accident. (Plaintiff's Testimony, Sherry Hoerr's Testimony, Mark Kaili's Testimony, Glenn Saquilon's Testimony, Gayle Ortiz' Testimony).

15. The evidence further demonstrates that it is more likely than not that, on the date of the accident, there were no adhesive non-skid strips on the surface of the steps in question. Both plaintiff and former lifeguard Mark Kaili, who was on duty on June 23, 1988, testified that there were no adhesive strips on the steps on the date of the accident. (Plaintiff's Testimony and Mark Kaili's Testimony).

Lifeguard Glenn Saquilon testified that he put non-skid adhesive strips on the steps in March 1988. Saquilon also testified, however, that the adhesive strips used on the steps had to be replaced every few weeks because they would wear out every week-and-a-half to two weeks. Saquilon

testified that the last time prior to the accident that he could recall seeing strips on the stairs was about one week prior to the accident on or about June 16 or 17, 1988. Saquilon did not work from June 21, 1988 to June 24, 1988, so he could not testify whether there were adhesive strips on the steps on June 23, 1988, the date of the accident. (Glenn Saquilon's Testimony).

Supervising Lifeguard Gayle Ortiz testified that the steps in question were painted during the months of January, February and March, 1988. Ortiz testified that during the painting, the adhesive strips were pulled off the steps. Ortiz could not remember seeing adhesive strips on the steps after the steps were painted. Ortiz could not testify as to the condition of the steps on the date of the accident since she was not on duty at the Tripler Army Medical Center swimming pool from June 7, 1988 through the end of the month. (Gayle Ortiz' Testimony).

16. The evidence also demonstrates that it is more likely than not that plaintiff's slip and fall was not caused by an unsafe slippery condition on the steps. Both plaintiff's expert witness, Charles Hayes, and defendant's expert witness, Roger Sherman, examined the subject steps and ran tests on the steps. The results of both Hayes' and Sherman's tests showed that the coefficient of friction value for bare feet on the steps in a wet state was within the "safe" range established by the American Society of Testing Materials. (Charles Hayes' Testimony and Roger Sherman's Testimony).

The military specifications that plaintiff's expert witness Charles Hayes attempted to use to show the steps were dangerously slippery are not reliable evidence of what might be safe. First, these military specifications do not include a coefficient of friction value for bare feet on wet surfaces, so Hayes could only guess at whether the results of his test meant the steps were unsafe when wet and traversed by bare feet. Second, the military specifications Hayes referred to were designed to determine the safety of steel surfaces on ships,

not the safety of concrete steps such as those found at the Tripler Army Medical Center swimming pool.

17. The steps where plaintiff fell were not uniform in risers (vertical height of step) or treads (horizontal width of step). (Charles Hayes' Testimony and Sheldon Zane's Testimony). The difference between the lowest riser (the second step) and the highest riser (the bottom step) was at least 1.18 inch. (Charles Hayes' Testimony).

18. The steps in question were built in 1947. (Charles Hayes' Testimony). The Uniform Building Code of 1946 provides that "the maximum variations in the height of risers and in the width of treads in any one flight shall be three-sixteenths inch ($^3/_{16}$")." (Defendant's Exhibit K—1946 Uniform Building Code, Chapter 33—Stairs and Exits). The risers varied by more than six times the amount permitted under the Uniform Building Code. (Charles Hayes' Testimony).

19. After plaintiff fell, Mark Kaili, the lifeguard on duty, came to plaintiff's aid and commented that he had previously told others at the Tripler Army Medical Center that the steps were slippery. (Mark Kaili's Testimony). Mark Kaili notified Sherry Hoerr about the accident. Hoerr accompanied plaintiff to Kaiser Hospital. (Mark Kaili's Testimony and Sherry Hoerr's Testimony).

## CONCLUSIONS OF LAW

1. The Hawaii Recreational Use Statute, Hawaii Revised Statute section 520–4, provides that "except as specifically recognized by or provided in section 520–6, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby ... assume responsibility for or incur liability for any injury to person or property caused by an act or omission or commission of such persons."

2. Section 520–6 of the Hawaii Revised Statutes reemphasizes the limitation of liability provided in section 520–4, providing that nothing in chapter 520 shall be construed to:

(1) Create a duty of care or ground of liability for injury to persons or property.

(2) Relieve any person using the land of another for recreational purposes from any obligation which the person may have in the absence of this chapter to exercise care in the person's use of such land and in the person's activities thereon, or from the legal consequences of failure to employ such care."

3. The term "recreational purpose" includes, but is not limited to: "hunting, fishing, *swimming*, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, *and viewing or enjoying* historical, archaelogical, *scenic*, or scientific *sites*." Haw.Rev.Stat. § 520–2(3).

4. The Hawaii Recreational Use Statute applies where the visitor combines a recreational purpose with a non-recreational purpose. In *Fisher v. United States*, 534 F.Supp. 514 (D. Montana 1982), a young girl fell on a snowplow blade and died while on a school field trip at a federal wildlife refuge. Plaintiffs claimed the purpose of the trip was educational, not recreational, and that therefore the Montana Recreational Use Statute did not apply. The court did not agree, stating:

At the time of the accident the decedent was doing the things which are done on a children's picnic although the activities scheduled to occur later were, at least in the minds of the school authorities, educational.... A visit to a zoo, a museum, or a wildlife refuge may be educational, recreational, vocational, or some combination of all three.

Are conducted tours of zoos, museums, or refuges, generally regarded as pleasure expeditions, something different because they are called "field trips" and the participants are expected to learn about monkeys, paintings, or wildflowers, in addition to experiencing pleasure from looking at them? In short, the ordinary uses of the zoo, museum, or

refuge are recreational, and masses of people visit them for that purpose alone. Probably most of those motivated by other purposes, such as study or work, also find the expedition pleasurable. Should the burden on the landowner be increased because a visitor of his own will combines a recreational use with some study or work of his own?

*Id.* at 515–26.

■ 5. The Hawaii Recreational Use Statute applies to the government as it would to any private landowner. *Proud v. United States,* 723 F.2d 705 (9th Cir.1984).

■ 6. The Hawaii Recreational Use Statute applies to military property even though they may be closed to the general public. *Stout v. United States,* 696 F.Supp. 538 (D.Haw.1987). The land does not have to be open to every person in the general public for the statute to apply. *Collard v. United States,* 691 F.Supp. 256 (D.Haw.1988).

7. In this case, the Hawaii Recreational Use Statute applies to immunize the defendant from liability because defendant permitted plaintiff to enter the Tripler Army Medical Center recreational facility without charge, and plaintiff therein engaged in a recreational purpose. Defendant is therefore not liable unless one of the exceptions to the Hawaii Recreational Use Statute applies.

8. There are three exceptions to the limitations provided in sections 520–4 and 520–6. The landowner may be held liable:

(1) For wilful or malicious failure to guard or warn against a dangerous condition, use, or structure which the owner knowingly creates or perpetuates and for wilful or malicious failure to guard or warn against a dangerous activity which the owner knowingly pursues or perpetuates.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof . . .

(3) For injuries suffered by a house guest while on the owner's premises . . .

Hawaii Revised Statute section 520–5.

9. The second exception listed in section 520–5 does not apply because defendant did not charge plaintiff for entering the recreational facility.

10. The third exception listed in section 520–5 does not apply because plaintiff was not a "house guest" as defined in section 520–2(5). Section 520–2(5) defines the term "house guest" as "any person specifically invited by the owner or a member of the owner's household to visit at the owner's home."

11. The only exception that might apply is the first exception listed in section 520–5, the wilfulness exception. In order to hold the defendant liable under the wilfulness exception, the court must find there was a dangerous condition at the Tripler Army Medical Center that was knowingly created or perpetuated by the defendant, and that defendant wilfully or maliciously failed to guard or warn against this dangerous condition. Haw.Rev.Stat. § 520–5.

The evidence shows that it is more likely than not that the steps in question were not dangerously slippery. Expert witnesses from both parties testified that their tests showed that the coefficient of friction value for bare feet on the surface of the steps when wet was within the safe range established by the American Society of Testing Materials.

Because the evidence demonstrates that the steps were not dangerously slippery when wet, the lack of "Slippery When Wet" signs does not constitute wilful or malicious failure to warn against a dangerous condition. The lack of non-skid adhesive strips on the steps does not constitute wilful or malicious failure to guard against a dangerous condition because the tests were conducted on the surface of the steps, without the adhesive strips.

The evidence shows that there was a variation in the height of the risers. However, there is no evidence that any of the lifeguards at Tripler Army Medical Center swimming pool knew of these variations in

heights. Therefore, the government's conduct cannot amount to wilful and malicious failure to guard against a dangerous condition which it *knowingly* created or perpetuated. Additionally, this court is not convinced that the variation in heights was the cause of plaintiff's fall. The greatest variation in height, according to Charles Hayes, was computed by comparing the bottom step to the second to top step. Plaintiff, however, slipped on one of the top three steps.

The court finds defendant is not liable under the wilfulness exception to the Hawaii Recreational Use Statute because defendant did not wilfully or maliciously fail to guard or warn against a dangerous condition which defendant knowingly created or perpetuated.

12. The Hawaii Recreational Use Statute is a statutory modification of the common law of torts and does not hold a landowner liable for simple negligence. It provides for liability only where the landowner wilfully or maliciously fails to warn against a known dangerous condition, or where the landowner has charged a fee for use of the land, or where the injured person was a houseguest. If the Hawaii legislature had wanted to provide for additional exceptions, such as liability for negligent failure to warn, it could have easily expressed such intention. Instead, the legislature enumerated only three specific exceptions. The enumeration of specific exclusions from a statute is an indication that the statute applies to all cases not specifically excluded. *Keaukaha–Panaewa Community Association v. Hawaiian Homes Commission*, 588 F.2d 1216 (9th Cir.1978). *Cf. Collard v. United States*, 691 F.Supp. 256 (D.Haw.1988) (wherein Judge Kay suggested, in dicta, that even if the Hawaii Recreational Use Statute applied to immunize the government defendant from liability, additional theories of liability might be available).

13. Because this court finds that the Hawaii Recreational Use Statute applies, that the government's conduct was not wilful or malicious, and that no additional theories of·liability are available, any find-

ing as to liability or damages is unnecessary for the disposition of this case, and the court specifically makes no finding as to liability or damages.

IT IS SO ORDERED.