37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Stanton MILLER, Plaintiff-Appellant,
v.
UNITED STATES of America, DEPT. OF the ARMY, PORTLAND
DISTRICT CORPS OF ENGINEERS, Defendant-Appellee.
 No. 93-35477.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1994.
Decided Sept. 28, 1994.
 
 Before: ALDISERT,* THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Stanton Miller appeals the district court's grant of summary judgment in favor of the United States Department of the Army, Portland District Corps of Engineers in an action alleging that the Corps was liable for injuries he sustained during a bicycle tour sponsored by the National Multiple Sclerosis Society. Because we conclude that the district court did not err in concluding that the Corps could not be held liable pursuant to Washington's recreational use statute, Wash.Rev.Code Sec. 4.24.210, we affirm.
 
 
 3
 Miller brought this action against the Corps under the Federal Torts Claim Act. The trial court had jurisdiction pursuant to 28 U.S.C. Secs. 1346(b) and 2671-2680. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Appeal was timely filed under Rule 4(a) of the Federal Rules of Appellant Procedure.
 
 
 4
 We review a grant of summary judgment de novo, applying the same standard as that used by the district court under the Federal Rules of Civil Procedure. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Stevens v. Moore Business Forms, 18 F.3d 1443, 1446 (9th Cir.1994).
 
 I.
 
 5
 Miller was injured while participating in the 1991 MS 150 Bike Tour, sponsored by the National Multiple Sclerosis Society,[1] when his bicycle hit a "gap" on the spillway surface of Bonneville Dam between Oregon and Washington states, owned by Appellee Portland District Corps of Engineers. The roadway across the dam was opened to the riders on the tour. In order to gain access to the dam, the MS Society obtained a special event permit from the Corps, which was granted without charge on the express condition that the MS Society not solicit contributions or charge entrance and/or admission fees on government property. Miller contends that the Corps was negligent in failing to eliminate or cover the gap between two concrete plates into which one of his wheels fell, in failing to warn him of the existence of the gap or in failing to reroute the tour to avoid the gap.
 
 
 6
 The district court granted summary judgment in favor of the Corps on the ground that it was immune under Washington's recreational use statute.[2] Miller asserts several reasons why the Washington recreation use statute may not shield the Corps from liability: The area where the accident occurred was closed to those not participating in the event, the opportunity to cross the dam was contingent upon payment of a fee to the MS Society and the gap constituted a "known dangerous artificial latent condition."
 
 II.
 
 7
 Our task is to determine whether Washington's recreational use statute barred recovery. Under that statute:
 
 
 8
 Except as otherwise provided in subsection (3) of this section, any public or private landowners or others in lawful possession and control of any lands ... who allow member of the public to use them for the purpose of outdoor recreation, which term includes, but is not limited to ... bicycling, ... without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.
 
 
 9
 Wash.Rev.Code Sec. 4.24.210(1). Subsection (3) limits the above immunity from liability:
 
 
 10
 Nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted.
 
 
 11
 Id. at Sec. 4.24.210(3). The statute further states:
 
 
 12
 The purpose of ... 4.24.210 is to encourage owners and others in lawful possession and control of land and waters areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by acts or omissions of persons entering thereon.
 
 
 13
 Id. at Sec. 4.24.200.
 
 III.
 
 14
 That all members of the public were not provided access across the dam did not defeat protection under the statute, in the district court's view, because the bicyclists were "members of the public" using the spillway for recreational purposes. We agree. Washington's recreational use statute, by its terms, applies to landowners "who allow members of the public to use them for the purpose of outdoor recreation." It does not require that the land be open to every member of the public at all times. We conclude that bicycling is an outdoor recreational activity, that the cyclists who participated in the MS 150 Bike Tour were members of the public and that Section 4.24.210 therefore applies. See, e.g., Mansion v. United States, 945 F.2d 1115, 1117 (9th Cir.) (California recreation use statute applied to injury sustained during a picnic at a naval air station even though public access was restricted); Palmer v. United States, 742 F.Supp. 1068, 1072 (D.Haw.1990), aff'd, 945 F.2d 1134 (1991) ("The land does not have to be open to every person in the general public for the statute to apply.").
 
 IV.
 
 15
 Miller does not dispute that the Corps issued a special use permit to the MS Society free of charge and on the condition that it not charge admission or solicit members of the public on government property. Rather, he contends that the $25 fee charged by the MS Society exposes the Corps to liability because the Corps was "aware of the fund raising nature of the event" and because it approved the fee charged by the MS Society.
 
 
 16
 The district court concluded that the fee charged by the MS Society was used to cover expenses related to the event, such as accommodations and traffic control, and that the "fund raising" aspect was limited to money raised by participants through their solicitation of sponsors. It analogized this case to Jones v. United States, 693 F.2d 1299, 1303 (9th Cir.1982), in which we held that a one dollar charge indirectly levied by the government on visitors to rent an inner tube for use on a river running through Olympic National Park did not constitute a "fee charged for the use of the land." Miller argues that the purpose of the $25 fee is irrelevant as long as payment is a condition precedent to access across the dam.
 
 
 17
 We agree with the district court that the fee charged by the MS Society was administrative in nature rather than a charge to cross Bonneville Dam. Indeed it could not be a charge to cross the dam because the Corps conditioned its grant of a special permit on the MS Society's agreement to levy no such charges against the participants. Regardless of whether the $25 dollars paid by the participants to the MS Society constituted a fee, it is undisputed that this alleged economic benefit in no way accrued to the Corps, which issued the special permit free of charge. The purpose for which land is held open is determined by the landowner. Gaeta v. Seattle City Light, 54 Wash.App. 603, 608-09, rev. denied, 113 Wash.2d 1020 (1989). Here the Corps did not allow access for financial gain but rather for recreational purposes:
 
 
 18
 [The consideration exception to recreational use statutes] is intended to serve more broadly as a proxy for differentiating the entrepreneur-landowner whose land is open for business reasons from the landowner whom the statute encourages to open his land on a gratuitous basis on the promise of immunity. The relevant factor in determining whether to apply the "consideration" exception is thus not whether the consideration passes directly from user to landowner but rather whether economic benefit inures to the landowner.
 
 
 19
 Ducey v. United States, 713 F.2d 504, 514 (9th Cir.1983) (footnote omitted). Because the Corps granted participants of the MS 150 Bike Tour access to Bonneville Dam at no charge and for recreational purposes, we agree with the district court that the MS Society administrative fee did not preclude operation of Washington's recreational use statute.
 
 V.
 
 20
 The recreational use statute does not provide immunity from liability for injuries that result from "a known dangerous artificial latent condition for which warning signs have not been posted." Wash.Rev.Code. Sec. 4.24.210(3). The district court concluded that gap was not a "latent" condition and that the Corps was therefore immune under the recreational use statute. The term "latent" means not readily apparent to the recreational user. Van Dinter v. City of Kennewick, 121 Wash.2d 38, 45 (1993) (visitor of city park who was injured when he struck his eye on metal antenna of caterpillar-shaped piece of playground equipment could not recover because the condition was not latent). The four terms contained in Section 4.24.210(3)--"known," "dangerous," "artificial" and "latent"--modify "condition" and not one another. "[The statute] does not hold landowners potentially liable for patent conditions with latent dangers. The condition itself must be latent.... Therefore injuries that result from latent dangers presented by a patent condition are not actionable under [the statute]." Id. at 46. See also Gaeta, 54 Wash.App. at 610 (plaintiff injured when the tire of his motorcycle caught in a groove in the roadway atop a dam could not recover because the tracks were obvious and therefore not a latent condition exposing municipality to liability).
 
 
 21
 After viewing a photograph of the accident scene provided by Miller and reviewing the undisputed facts, the district court concluded that the gap between the concrete plates was clearly visible to cyclists. The district court did not err in so concluding. The photograph plainly demonstrates that the gap between the concrete slabs was a patent condition. Because the gap between the concrete plates was patent, subsection (3) is not triggered and the Corps remains shielded from liability by the statute.
 
 VI.
 
 22
 We have considered all the arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 23
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At oral argument the court was informed that Appellant settled his claim against the MS Society
 
 
 [2]
 Miller's injury occurred on the Washington side of Bonneville Dam. The parties agree that Washington tort law applies