27 P.3d 1242 (2001)
Joyce NIELSEN, Respondent,
v.
PORT OF BELLINGHAM, Appellant.
No. 46249-1-I.
Court of Appeals of Washington, Division 1.
July 30, 2001.
*1243 Frank Chmelik, Chmelik & Johnson, Jennifer Willner, Richard Davis, Bellingham, for Appellant.
Catherine Smith, Howard Goodfriend, Edwards Shieh Smith & Goodfriend P.S., Seattle, Jeffrey Thigpen, Tario & Associates, Bellingham, for Respondent.

PUBLISHED IN PART
KENNEDY, J.
After the trial court refused to rule that the recreational use statute immunized the Port of Bellingham from liability for Joyce Nielsen's negligence suit, a jury awarded her damages for injuries she suffered in a fall on a float at Squalicum Harbor. The Port appeals, claiming, inter alia, that it is entitled to immunity because it allows the general public to walk on its floats for recreational purposes without charging a fee. We affirm because Nielsen, who fell on slippery algae as she left the boat of a "live-aboard" tenant moored at the marina, was not a "recreational user" within the meaning of the recreational use statute.[1]

FACTS
Squalicum Harbor is a commercial marina owned and operated by the Port of Bellingham. The Port leases moorage to both commercial and pleasure-boat owners. Dr. Sheldon Wilkins entered into a lease agreement with the Port to moor his 62-foot motor yacht, the Cadenza, at Squalicum Harbor. Wilkins is a "live-aboard" which means he pays increased moorage fees associated with his resident-status at the Harbor. The Cadenza was moored at Gate One, where four commercial fishing vessels were also moored. Because of its small size, Gate One had far less traffic than other, larger commercial and pleasure-boat moorages located at the Harbor, and received significantly less maintenance. While some of the busier floats at the Harbor are made of concrete, the float at Gate One is made of wood.
To access the Gate One moorages, users walk down a metal ramp leading from the parking lot to the wooden surface of the float. At trial, Dr. Wilkins testified that the surface of the float at the foot of the ramp was slippery, particularly in the wet autumn and winter months, due to the accumulation of algae. Wilkins, who himself had slipped on the wooden surface at the foot of the ramp in the past, attempted to clear the algae on a few occasions, by using soap, bleach, and a garden hose. Savior Papetti, who has 58 years of experience as a commercial fisherman and who has moored boats at Squalicum Harbor since 1963, had a fishing boat moored at Gate One. He testified that he had slipped and fallen on algae on the ramp. The Port's maintenance manager testified *1244 that although other floats at the facility were periodically pressure washed, the float at Gate One was not.
On the evening of November 2, 1994, Joyce Nielsen visited Dr. Wilkins aboard the Cadenza. She boarded without incident around 5:15 p.m. Steve and Linda Wilkins joined them around 6 p.m. that evening. They testified that they had slipped on the wooden surface near the foot of the ramp that evening, though neither of them fell. Shortly after Steve and Linda Wilkins arrived, Joyce Nielsen left the boat. During her visit aboard, Joyce consumed one and a half "screwdrivers" consisting of three parts orange juice to one part vodka. As she was leaving, Steve and Linda warned her to be careful because the dock was "really slick". It had rained earlier in the evening, but was above freezing, and there was no ice on the float.
Nielsen proceeded up the float toward the ramp leading to the parking lot. She was wearing sturdy rubber-soled shoes. When she got to the foot of the ramp, she felt her feet go out from under her. She fell hard, landing on her right side. When she tried to get up, she realized that her right wrist was broken. With considerable difficulty, she was able to get up the ramp and to a pay phone, where she called for assistance.
After filing a timely claim with the Port as required by RCW 4.96.020, Nielsen brought this lawsuit claiming that the Port negligently maintained the float at Gate One, proximately causing her fall and injuries.
The Port sought dismissal of Nielsen's lawsuit by summary judgment, claiming, inter alia, that it was immune from liability under Ch. 4.24 RCW, the recreational use statute, because "[v]isitors are permitted to walk on the floats and docks, enjoy the view, and look at the boats" without paying any fee for the privilege. Brief of App. at 2. The court denied the Port's motion and the case proceeded to trial, where the court instructed the jury that the Port owed Joyce Nielsen the standard of ordinary care owed to a business invitee.
After the jury entered a plaintiff's verdict, the Port timely filed a motion for new trial, for judgment notwithstanding the verdict, and for reduction of the damages award. The court denied this motion, and this appeal followed.

DISCUSSION
The Port argues that the trial court erred when it denied the Port's pre- and post-trial motions, contending that it is immune from Nielsen's suit because it allows members of the public to use its floats and docks for recreational purposes without charging a fee of any kind to such users. The trial court did not err. Nielsen was not a recreational user within the meaning of the recreational use statute at the time of her injury; she was an invitee of Dr. Wilkins, a paying moorage customer.[2]
The relevant portion of RCW 4.24.210(1) states:
[A]ny public or private landowners ... of... water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation... without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.
(Italics ours.) By the plain language of the statute, the grant of immunity covers unintentional injuries to members of the public who are using the property for the purposes of outdoor recreation. As statutes such as RCW 4.24.210(1) are in derogation of common law rules of liability of landowners, they are to be strictly construed. Matthews v. Elk Pioneer Days, 64 Wash.App. 433, 824 P.2d 541 (1992) (outdoor recreation does not include festivals). The purpose of the statutory grant of immunity is to encourage property owners to open up their properties for public recreational use. See RCW 4.24.200.
*1245 The Port points to this court's decision in Gaeta v. Seattle City Light, 54 Wash.App. 603, 774 P.2d 1255 (1989) wherein we said:
We find the proper approach in deciding whether or not the recreational use act applies is to view it from the standpoint of the landowner or occupier. If he has brought himself within the terms of the statute, then it is not significant that a person coming onto the property may have some commercial purpose in mind. By opening up the lands for recreational use without a fee, City Light has brought itself under the protection of the immunity statute, and it therefore is immaterial that Gaeta may have driven across the dam in search of gasoline at the resort.
Id. at 608-09, 774 P.2d 1255. The Port argues that from its standpoint, it has opened up its docks for recreational use without a fee to all those who want to walk on the floats to look at boats and look out over the water, therefore, it has brought itself under the protection of the immunity statute and it is immaterial that Nielsen came to the dock for the purpose of visiting a "live-aboard" who pays moorage fees.
Our statement in Gaeta quoted above must be read in the context of the facts of that case. There, the plaintiff was on a cross-country scenic motorcycle tour, and his bike needed gasoline. Thus, he turned off the highway onto a road leading to Diablo Dam "for the dual purpose of looking at the scenery and getting gas". Id. at 604, 774 P.2d 1255. The roadway across the dam was under the control of Seattle City Light pursuant to its license from the United States, which required that Seattle City Light "`in no way prevent the use of ... the reservoirs and project area for boating, fishing and other recreational purposes by the public when and to the extent that such public use does not directly interfere with power use.'" Id. at 605, 774 P.2d 1255 (quoting from a trial exhibit). Seattle City Light did not operate the resort where the plaintiff intended to purchase gasoline, and it charged no fees for use of the roadway or any of the outdoor recreational uses in the vicinity. The roadway across the dam led only to the resort and abutting lands left open by Seattle City Light for public recreational use.
The Gaeta court was careful to distinguish the facts in that case from those in Smith v. Southern Pac. Transp. Co., Inc., 467 So.2d 70 (La.Ct.App.1985). In Smith, a commercial truck driver was injured as the result of the city's failure to post a sign warning of the low clearance of a railroad overpass while driving on a roadway that happened to run through a city park. The roadway was built and maintained primarily for commercial use, as opposed to recreational use. See Gaeta, 54 Wash.App. at 608, 774 P.2d 1255. Here, from any reasonably objective measure of the Port's "standpoint", the purpose of its marina at Squalicum Harbor is commercialthe mooring of fishing boats and pleasure craft for a fee. The facts of this case are more like Smith than Gaeta. We decline to extend our statement in Gaeta to the facts of the instant appeal.
This case also bears some factual similarity to Plano v. City of Renton, 103 Wash.App. 910, 14 P.3d 871 (2000), wherein this court held that the city of Renton was not immune from suit for injuries suffered by a moorage customer on a ramp leading to a moorage dock owned by the city, because the city received a moorage fee for the use of the property. As does the Port here, the City of Renton argued that it was immune from suit because it allowed park users who had been charged no fee to walk on the floats and gangways, and it also allowed boaters to moor for up to four hours during the day without paying a fee. We said: "But Washington's statute does not say that a landowner can have immunity so long as the lands or water areas are available free of charge some of the time. The statute simply states that there is no immunity if the owner `charges a fee of any kind.'" Id. at 914, 14 P.3d 871. We noted that for immunity to attach, "[a] landowner must only show that it charges no fee for using the land or water area where the injury occurred," but concluded that "the metal ramp where Plano fell is a necessary and integral part of the moorage. The reason why the two ramps and the connecting gangways exist is to provide access to the floating dock, a fee-generating portion of the *1246 park." Id. at 915, 14 P.3d 871. Here, the reason the float at Gate One exists is to provide moorage for commercial fishing boats and one "live aboard"the Port's paying customers.
In sum, the recreational use statute provides the Port with no immunity from Nielsen's suit, and the trial court properly denied the Port's motions for summary judgment and judgment notwithstanding the verdict. Affirmed.
The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports but will be filed of public record in accord with RCW 2.06.040.
WEBSTER, J., and GROSSE, J., concur.
NOTES
[1] We treat the Port's remaining contentions in the unpublished portion of this opinion.
[2] While still reserving its claim to immunity under the recreational use statute, the Port agreed that the jury should be instructed that Nielsen, as a guest of Dr. Wilkins, was a business invitee. Apart from its claims under the recreational use statute, the Port does not challenge Nielsen's status as an invitee in this appeal. Accordingly, the trial court's determination that Nielsen was an invitee, rather than a licensee, is the law of the case.