RONALD K. WIDMAN, ET AL., *Respondents*, v. PAIGE J. JOHNSON, *Appellant.*

*Craig W. Weston* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow, P.S.*, for appellant.

*Duane C. Crandall* and *Roethler, Crandall, Long & O'Neill*; and *David A. Bledsoe* and *Perkins Coie*, for respondents.

MORGAN, J. — Ronald Widman claimed against Paige J. Johnson and Hanson Natural Resources Company (Hanson) for personal injuries sustained in an auto accident. Johnson cross-claimed against Hanson. When the trial court granted summary judgment in favor of Hanson, Johnson filed this appeal and Widman cross-appealed. Taking the facts in the light most favorable to the appellants,[1] we affirm.

Hanson is a forest products company with more than 100,000 acres of land in southwestern Washington. To access its land, it maintains more than 1,000 miles of logging roads.

One of Hanson's logging roads is called the Elochoman Main Line Road (the Main Line). At the locations pertinent here, the Main Line runs east and west. It intersects twice with State Route 407,[2] one intersection being a half mile east of the other. Most of the way, it has a gravel surface.

In years past, the Main Line was posted "No Trespassing."[3] At the times material here, however, Hanson left

the Main Line and other roads and lands open so that the

---

[1] *Lauritzen v. Lauritzen*, 74 Wn. App. 432, 437, 874 P.2d 861, *review denied*, 125 Wn.2d 1006 (1994).

[2] The Main Line may meet SR 407 at other places also, but only the intersections described in the text are pertinent to this case.

[3] Br. of Appellant at ex. K.

public can use them for recreational purposes. Members of the general public do use Hanson lands extensively. These activities include fishing; hunting of deer, elk and grouse; picking of wild blackberries and huckleberries; and bird watching of eagles, redtail hawks and owls.[4]

Thus, "on virtually all entrances to its logging roads,"[5] Hanson posted signs saying "Private Property" and "The Forest Land Behind This Sign Is Open For RECRE-ATIONAL USE ONLY."[6]

We assume, as Johnson contends, that the Main Line is not just used for recreation. Between its two intersections with SR 407, it runs more or less in a straight line. In that same distance, SR 407 arcs. Thus, drivers can use the Main Line as a shortcut between the two intersections.

Before the accident, Hanson had posted stop signs at the Main Line's intersections with SR 407. When in place, these signs commanded drivers on the Main Line to stop before entering SR 407. The sign at the easterly intersection had been removed by vandals six times in the six months preceding the accident. Hanson had replaced it three or four days before the accident, but even so, it was not in place when the accident occurred.

On October 7, 1991, Johnson, Widman, Trent Reed and Todd Ross went fishing along the Elochoman River. Johnson was driving a pickup in which the others were passengers. On the way back, she was following two other vehicles on SR 407. As she approached that highway's westerly intersection with the Main Line, Reed asked her to turn left and drive east on the Main Line. Reed says he made this request "so we could all try to spot some elk."[7] Independent witnesses in other vehicles imply that

---

[4]Clerk's Papers at 34.

[5]Br. of Appellant at 10.

[6]Br. of Appellant at ex. L.

[7]Clerk's Papers at 75.

Johnson may have been trying to use the Main Line as a means of passing the vehicles she had been following on SR 407.

Johnson turned as Reed had requested. At the place where she turned, there was no sign stating that Hanson's land was open for recreational use only.

After turning onto the Main Line, Johnson drove "at a very fast speed,"[8] "well in excess . . . of 55 miles per hour,"[9] notwithstanding the primitive nature of the road. After traveling about half a mile, she approached the Main Line's easterly intersection with SR 407. She failed to observe the intersection in time to stop, darted into SR 407, and collided with a pickup that was northbound on the state highway.

On November 6, 1992, Widman sued Johnson for personal injuries. Johnson cross-claimed against Hanson, and Widman then sued Hanson as well as Johnson.

A year later, Hanson moved for summary judgment, arguing that RCW 4.24.210 immunized it from suit. The trial court granted Hanson's motion. Johnson and Widman each filed a notice of appeal, but only Johnson has pursued the matter in this court.[10]

RCW 4.24.210 provides in part:

> (1) Except as otherwise provided in subsection (3) of this section, any public or private landowners or others in lawful possession and control of any lands whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

---

[8]Clerk's Papers at 88.

[9]Clerk's Papers at 84.

[10]Widman has not filed a brief and did not argue the case. Hanson seeks sanctions, which we do not award.

. . . .

    (3) . . . Nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted. . . .

Johnson contends that RCW 4.24.210 does not apply here. This is true, she says, because the Main Line (a) "does not serve as an access to any recreational spot" and (b) "was not restricted to 'recreational purposes.' "[11] In essence, she says the Main Line was not recreational land within the meaning of the statute, or, at a minimum, that whether the Main Line was recreational land is a matter for the jury.

█ █ We disagree. Every reasonable person reading this record would believe that the Main Line itself was, to use Johnson's words, a "recreational spot." Every reasonable person would also believe that Hanson had opened the Main Line for recreational use. Those matters being established, the fact that the Main Line may also have been used for other purposes (e.g., as a shortcut by nonrecreating members of the public) lacks legal significance.[12] We hold that the Main Line was land of the kind described in RCW 4.24.210, and that RCW 4.24.210 applies to this case.

Johnson contends that even if RCW 4.24.210 applies, it does not give Hanson immunity. The reason, she says, is that the intersection of the Main Line and SR 407 was a "latent" condition for which no warning sign was posted.

█ █ Again, we disagree. A condition is "latent" if not readily apparent to the general class of recreational users.[13] What a particular user sees or does not see is imma-

---

[11]Br. of Appellant at 13.

[12]*McCarver v. Manson Park & Recreation Dist.*, 92 Wn.2d 370, 377, 597 P.2d 1362 (1979); *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 608-09, 774 P.2d 1255, *review denied*, 113 Wn.2d 1020 (1989).

[13]*Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 45, 846 P.2d 522 (1993); *Tabak v. State*, 73 Wn. App. 691, 698, 870 P.2d 1014 (1994); *Tennyson v. Plum*

terial.[14] The intersection of a logging road and a state highway is readily apparent to the general class of recreational users. Hanson is immune, and the trial court did not err in ruling as it did.

Affirmed.

HOUGHTON, A.C.J., and TURNER, J., concur.

Reconsideration denied May 31, 1996.

Review denied at 130 Wn.2d 1018 (1996).

[No. 18315-3-II.   Division Two.   March 29, 1996.]

---

*Creek Timber Co.*, 73 Wn. App. 550, 555, 872 P.2d 524, *review denied*, 124 Wn.2d 1029 (1994).

[14]*Tennyson*, 73 Wn. App. at 555.