Honorable Tim Sheldon State Senator, 35th District P.O. Box 40435 Olympia, WA 98504-0435
Dear Senator Sheldon:
By letter previously acknowledged, you have requested our opinion on the following questions relating to county revenues derived from the local option sales and use tax program set forth in RCW82.14.370:
 1. May a county use revenues from the local option sales and use tax program for rural communities, authorized under RCW 82.14.370, to finance any or all of the following costs related to public facilities: (1) capital facilities costs, including acquisition, construction, rehabilitation, alteration, expansion, or improvements of public facilities; (2) costs of development and improvement for the public facilities; (3) project-specific environmental costs; (4) land use and permitting costs; (5) costs of site planning and analysis; and (6) project design, including feasibility and marketing studies and plans, and debt and revenue impact analysis?
 2. Does the requirement in RCW 82.14.370(3) that a public facility must be listed as an item in an officially adopted county overall economic development plan, or the economic development section of a county's comprehensive plan, or the comprehensive plan of a city or town located within a county for those counties planning under the Growth Management Act (GMA), mean that the public facility must have an economic development purpose such as the permanent private sector job creation or retention (beyond jobs created directly in constructing a project)?
 3. Is the answer to question 2 the same for those counties that do not have an adopted overall economic development plan and do not plan under the GMA, where RCW 82.14.370(3) requires that the public facilities must be listed in the county's capital facilities plan or the capital facilities plan of a city or town located within the county?
 4. If the answer to question 2 or 3 is yes, what is the standard, if any, by which a county must determine whether a public facility has an economic development purpose?
 BRIEF ANSWERS
The answer to your first question is yes — a county can use revenues derived from the local option sales and use tax program to finance the costs listed in your question when those costs are associated with public facilities as defined in RCW 82.14.370.
The answer to your second question is yes, because a public facility listed in the economic development plan or economic development section of the comprehensive plan of a county planning under the Growth Management Act will, by virtue of its inclusion in the plan, have an economic development purpose.
The answer to your third question is no, because no statute requires a county that does not plan under the Growth Management Act to include an economic development purpose in its capital facilities plan.
The answer to your fourth question is that there are no express statutory standards by which a county can determine whether a public facility has an economic development purpose. A county planning under the Growth Management Act need not independently measure the economic purpose of public facilities under RCW82.14.370 against any standards. Rather, the county (or city within the county) need only list the public facility in its economic development plan or in the economic development section of its comprehensive plan in order to finance a public facility with revenues derived from the local option sales and use tax.
 ANALYSIS 1. May a county use revenues from the local option sales and use tax program for rural communities, authorized under RCW 82.14.370, to finance any or all of the following costs related to public facilities: (1) capital facilities costs, including acquisition, construction, rehabilitation, alteration, expansion, or improvements of public facilities; (2) costs of development and improvement for the public facilities; (3) project-specific environmental costs; (4) land use and permitting costs; (5) costs of site planning and analysis; and (6) project design, including feasibility and marketing studies and plans, and debt and revenue impact analysis?
A rural county may use revenues derived from the local option sales and use tax for all of the costs listed above provided those costs are associated with any of the public facilities defined in RCW 82.14.370(3). Other than identify the facilities that are eligible for funding and require that they be listed in the comprehensive plan, the statute does not limit the use of revenues derived from the tax to finance particular costs associated with the facility. Each item listed in your request is a cost that must be incurred in order to complete the public facility or otherwise is directly related to the facility.
 2. Does the requirement that a public facility must be listed as an item in the county's economic development plan, or the economic development section of the county's comprehensive plan, or the comprehensive plan of a city or town located within the county for those counties planning under the GMA mean that the public facility must have a economic development purpose such as permanent private job creation or retention?
The Legislature adopted the local option sales and use tax in 1997. See Laws of 1997, ch. 366, § 3 (codified at RCW 82.14.370). As originally enacted, the revenues from the tax could "only be used for the purpose of financing public facilities in rural counties." RCW 82.14.370 (1997). The Legislature passed the local option sales and use tax as one of several measures that were intended to assist rural distressed counties in their efforts to promote economic development and employment opportunities. Laws of 1997, ch. 366, §§ 1 2.
In 1999, the Legislature amended RCW 82.14.370 to define the public facilities that would qualify for financing with local options sales use tax revenues. See Laws of 1999, ch. 311, § 101. In the same chapter, the Legislature added the requirement that the public facilities must be listed in a county or city comprehensive plan in order to be financed with the tax revenues.Id.
Your questions ask whether RCW 82.14.370 requires public facilities funded with revenues from the local option sales and use tax to have an economic development purpose. The primary objective of statutory construction is to give effect to the intent of the Legislature. Lacey Nursing Ctr., Inc. v. Dep't ofRev., 128 Wn.2d 40, 53, 905 P.2d 338 (1995). To determine the Legislature's intent, we must look first to the plain meaning of the words in the statute. Id. RCW 82.14.370 requires that public facilities financed by the tax:
 [M]ust be listed as an item in the officially adopted county overall economic development plan, or the economic development section of the county's comprehensive plan, or the comprehensive plan of a city or town located within the county for those counties planning under RCW 36.70A.040. For those counties that do not have an adopted overall economic development plan and do not plan under the growth management act, the public facility must be listed in the county's capital facilities plan or the capital facilities plan of a city or town located within the county.
RCW 82.14.370(3).
The plain language does not require that public facilities have an economic development purpose. Rather, for counties that plan under the Growth Management Act (GMA), the facilities must be listed in the county's economic development plan or in the economic development section of the comprehensive plan. Therefore, we must determine whether the plans in question require facilities listed within them to have an economic development purpose.
An "economic development plan" is not defined in RCW 82.14. The GMA also does not define "economic development plan". While economic development is a goal of the GMA, it is not a separable element of a comprehensive plan for counties or cities that plan under the GMA. See RCW 36.70A.020(5), .070. Therefore, there is no requirement in the GMA that counties must plan for economic development separately from the other planning elements that include economic development aspects, such as land use, capital facilities, and transportation planning. See RCW 36.70A.070(1), (3), (6). Counties are free to include a separate economic development section in their comprehensive plans or to provide for economic development in their capital facilities plans.
Although not specifically required by the GMA, a GMA-planning county nevertheless must have either an overall economic development plan or a comprehensive plan-and include the public facility in that plan-in order to impose the local option sales and use tax. RCW 82.14.370. Therefore, we must determine what "economic development" means in the context of the GMA.
"Economic development" is not defined in the statute. Therefore, we must give it its ordinary meaning. See Simpson Inv. Co. v.Dep't of Rev., 141 Wn.2d 139, 150, 3 P.3d 741 (2000). Courts will look to a dictionary to discern the plain and ordinary meaning of a word. See Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911,922, 969 P.2d 75 (1998). "Economic" is broadly defined as "of or relating to the development, production, and management of material wealth, as of a country, household, or business enterprise." Webster's II New College Dictionary 357 (1995). "Development" means the act of aiding in the growth of something.Id. at 310 (from the definitions of "development" and "develop"). Under this definition, "economic development" would include, among other things, job growth and commercial and industrial expansion. Thus, if a county includes a public facility in its economic development plan, the county has identified that facility as benefiting the county's economy.
We note that this standard grants counties considerable discretion in determining whether a public facility should be included in the economic development plan. However, in exercising this discretion, counties must comply with the requirements of the GMA. For example, the comprehensive plan must be consistent with the goals of the GMA, RCW 36.70A.020, as well as with the adopted countywide planning policies. RCW 36.70A.210. Counties must coordinate their planning with the economic development plans of neighboring and included jurisdictions. RCW 36.70A.100. An economic development section of a comprehensive plan must be consistent with the other sections of the comprehensive plan. RCW 36.70A.070. And, very importantly, counties must allow for early and continuous public participation in the comprehensive planning process. RCW36.70A.140. These requirements will ensure that counties plan for their public facilities in advance, rather than use tax revenues to finance projects not planned for or properly evaluated.
 3. Is the answer to question 2 the same for those counties that do not have an adopted overall economic development plan and do not plan under the GMA, where RCW 82.14.370(3) requires that the public facilities must be listed in the county's capital facilities plan or the capital facilities plan of a city or town located within the county.
For those counties that do not plan under the GMA, RCW 82.14.370
requires only that the facility be listed in the capital facilities plan of the county or of a city within the county. For those counties that do not plan under the GMA, economic development is not a mandatory component of their comprehensive plans. See RCW 36.70.320. Therefore, in answer to your third question, there is no statutory requirement that the public facilities included in such a county's comprehensive plan must have an economic development purpose.
 4. If the answer to question 2 or 3 is yes, what is the standard, if any, by which a county must determine whether a public facility has an economic development purpose?
Our answer with respect to Question 2 is answered above. We answered question 3 in the negative; therefore, we do not need to reach this question with respect to counties that do not plan under the GMA.
To summarize, RCW 82.14.370 authorizes a county to finance the costs listed in your request if incurred for a public facility as defined in RCW 82.14.370. A capital facility that is included in a county's economic development plan or in the economic development section of a county's comprehensive plan need not have an economic development purpose separate from that contained in the plan. A county that does not plan under the GMA is not required to establish an economic purpose for those public facilities listed in its capital facilities plan. Finally, there are no standards, other than those set forth in its comprehensive plan, by which a GMA-planning county can determine whether a public facility has an economic development purpose.
We trust this opinion is of assistance to you.
Sincerely,
SHANNON E. SMITH Assistant Attorney General